# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

**SPEARE TOOLS, Inc.,**

Plaintiff,

-vs-

**Case No. 13-C-324**

**KLEIN TOOLS, Inc.,**

Defendant.

## DECISION AND ORDER

Speare Tools alleges that Klein Tools infringed unregistered product packaging trade dress for Speare's adjustable hole saw in violation of Lanham Act § 43(a), 15 U.S.C. § 1125(a). Klein Tools moves for summary judgment. For the reasons that follow, this motion is granted.

## I.     Background

Speare Tools is a Wisconsin corporation with its principal place of business in Williams Bay, Wisconsin. Speare Tools was founded by Bill Speare in 1996. After experimenting with several different prototypes, Speare designed and developed an adjustable hole saw called the Quick Cutter®, which can be used to cut circular holes in drywall and ceiling tiles for speakers, recessed (or "can") lighting, or HVAC duct and register installation.

Speare gained notoriety for his saw at the 1997 National Hardware Show, where he won the Retailer Choice award for best new product as an

attachment to a power tool. By 2003, Speare's saw was sold in all Lowes, Home Depot, Menards and numerous independent electrical stores around the country and in various countries in the world. From 2000-2008, Greenlee Textron, a Home Depot supplier, private-labeled Speare's hole saw under the Greenlee Textron brand name.

Prior to 2006, Speare Tools used a variety of packaging types for its adjustable hole saw, including packaging which consisted of a skin board and blister-type packaging, and also a clamshell package with a front plastic cover in a hinged design. In 2006, Speare decided that he wanted to change his packaging to freshen the look. At the time, most of the hole saws in the market were housed in a rectangular plastic package. Speare wanted to create something more eye-catching to shoppers and conceived of the idea of recessed packaging. Speare tried various designs and settled on the following:





ECF No. 16-4, Exhibit D, front, back, and side views.

In 2008, Home Depot replaced Greenlee Textron with Klein Tools. From 2008 to 2012, Klein Tools purchased more than 170,000 adjustable hole saws and packaging from Speare Tools under a private label arrangement. In 2011, Klein Tools began working with a Chinese vendor to replace Speare Tools, and in August 2012, Klein Tools stopped purchasing from Speare Tools. Klein Tools continues to use the latest iteration of Speare's packaging, which Speare Tools alleges is an infringement upon its trade dress.

## II.    Analysis

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The plain language of the rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must accept as true the evidence of the nonmovant and draw all justifiable inferences in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A party resisting summary judgment must present evidence "demonstrating that there is a genuine issue for trial." *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008).

Section 43(a) of the Lanham Act establishes a cause of action against any person who "on or in connection with any goods or services, or any container for goods, uses in commerce any *word, term, name, symbol, or any combination thereof*" which is likely to cause confusion as to the origin of goods. 15 U.S.C. § 1125(a)(1) (emphasis added). The phrase "word, term, name, symbol, or device, or any combination thereof" includes "distinctive aspects of a product's appearance, commonly known as trade dress." *Bretford Mfg., Inc. v. Smith Sys. Mfg. Corp.*, 419 F.3d 576, 579 (7th Cir. 2005). Trade

dress is generally divided into two categories: "product configuration, which relates to the design of a product, . . . and product packaging." *Fun-Damental Too v. Gemmy Indus. Corp.*, 111 F.3d 993, 996 (2d Cir. 1997). Speare Tools' claim falls into the latter category, claiming trade dress protection for the insert card and plastic material that houses the adjustable hole saw and dust shields. In response to an interrogatory, Speare Tools described its asserted trade dress as follows:

> A clear plastic disk nested with a plastic circular outer disk, wherein the inner circular disk has a raised plastic portion outlining the displayed hole saw when offered for sale. The inner circular disk also has a raised portion for a hex key or any adjustment tool. The trade dress also includes a circular cardboard insert between the two plastic circular disks showing from the front of the package an illustration of how the tool is used.

Thus, Speare Tools is *not* asserting trade dress rights in the adjustable hole saw, the inner or outer dust shields, the hex key, or non-identified features of the insert card or blister portion.

In order to prevail on a claim of trade dress infringement, a plaintiff must show (1) that its trade dress is either inherently distinctive or has acquired secondary meaning, and (2) that the similarity of the defendant's trade dress causes a likelihood of confusion as to the source or affiliation of the products. *Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277, 291 (7th Cir. 1998). "Secondary meaning" is acquired when "in the minds of the public, the

primary significance of a product feature . . . is to identify the source of the product rather than the product itself." *Qualitix Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 163 (1995); *see also Jay Franco & Sons, Inc. v. Franek*, 615 F.3d 855, 857 (7th Cir. 2010) ("to be valid a product-design mark must have acquired a 'secondary meaning' – a link in the minds of consumers between the marked item and its source"). In this manner, trademark law is "designed to reduce the costs customers incur in learning who makes the product, and this also helps sellers obtain rewards from producing goods of consistent quality, for consumers will find it easier to find and buy goods with which they have been satisfied in the past." *Bretford*, 419 F.3d at 579.

The person asserting protection for unregistered trade dress bears the burden of proving that "the matter sought to be protected is not functional." § 1125(a)(3).[1] This burden "gives force to the well-established rule that trade dress protection may not be claimed for product features that are functional." *Traffix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001). The "functionality doctrine" prevents trademark law, which "seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product

---

[1] Despite this clear statutory language, the Seventh Circuit holds that "functionality is an affirmative defense and so the burden of proof rests on the defendant," even for unregistered trade dress. *Publ'n Int'l, Ltd. v. Landoll, Inc.*, 164 F.3d 337, 339-340 (7th Cir. 1998). This nuance is not relevant for purposes of the Court's analysis.

feature. It is the province of patent law, not trademark law, to encourage invention by granting inventors a monopoly over new products designs or functions for a limited time, after which competitors are free to use the innovation." *Qualitex*, 514 U.S. at 164; *see also Franek*, 615 F.3d at 857 ("patent law alone protects useful designs from mimicry; the functionality doctrine polices the division of responsibilities between patent and trademark by invalidating marks on useful designs"); *Specialized Seating, Inc. v. Greenwich Indus., L.P.*, 616 F.3d 722, 727 (7th Cir. 2010) ("A novel or distinctive selection of attributes . . . can be protected for a time by a utility patent or a design patent, but it cannot be protected forever as one producer's trade dress. When the patent expires, other firms are free to copy the design to the last detail in order to increase competition and drive down the price that consumers pay").

A design is functional if it is "essential to the use or purpose of the article or if it affects the cost or quality of the article." *TrafFix*, 532 U.S. at 32. Courts look at several factors to determine whether a design is functional, including: (1) the existence of a utility patent, expired or unexpired, that involves or describes the functionality of an item's design element; (2) the utilitarian properties of the item's unpatented design elements; (3) advertising of the item that touts the utilitarian advantages of the item's design elements; (4) the dearth of, or difficulty in creating, alternative designs for the item's

- 7 -

purpose; and (5) the effect of the design feature on an item's quality or cost. *Georgia-Pacific Consumer Prods. LP v. Kimberly-Clark Corp.*, 647 F.3d 723, 727-28 (7th Cir. 2011). In short, a design that "produces a benefit other than source identification is functional." *Franek* at 857. Functionality can be determined at the summary judgment stage in appropriate cases. *Kimberly-Clark* at 727; *Landoll*, 164 F.3d at 340 ("a grant of summary judgment on the basis . . . that the plaintiff's trade dress . . . rests on functional features of the dress is proper only if no reasonable trier of fact could conclude otherwise").

Speare Tools argues that since there are so many ways to package a product, rarely would packaging be functional, that is, rarely would a company *need* to copy its competitor's package. This is the so-called "competitive necessity" aspect of trade dress infringement. "For purposes of a defense to trade dress infringement, 'functional' means *not* simply that the feature serves a function, but that the feature is necessary to afford a competitor the means to compete effectively." *Schwinn Bicycle Co. v. Ross Bicycle, Inc.*, 870 F.2d 1176, 1188 (7th Cir. 1989) (emphasis in original). Thus, a particular trade dress is "functional" if it is "something that the other producers of the product in question would have to have as part of the product in order to be able to compete effectively in the market." *Abbott Labs v. Mead Johnson & Co.*, 971 F.2d 6, 21 (7th Cir. 1992). "Determining that a particular feature is advantageous, or concluding that the feature makes it 'easier' to do

- 8 -

certain things, does not necessarily render it 'functional' as the term is employed under § 43(a)(1)." *Id.*

Accepting this argument would lead the Court down an incorrect path. In *TrafFix*, the Supreme Court clarified that it is not necessary to analyze "competitive necessity" if, as noted above, the design feature is "essential to the use of purpose of the device or when it affects the cost or quality of the device." The Court explained:

> Expanding upon the meaning of this phrase, we have observed that a functional feature is one 'the exclusive use of [which] would put competitors at a significant non-reputation-related disadvantage. [*Qualitex*,] 514 U.S., at 165 (quoting *Inwood Lab., Inc. v. Ives Lab., Inc.*, 456 U.S. 844, 850, n.10 (1982)). The Court of Appeals in the instant case seemed to interpret this language to mean that a necessary test for functionality is 'whether the particular product configuration is a competitive necessity.' . . . This was incorrect as a comprehensive definition. As we explained in *Qualitex, supra,* and *Inwood, supra,* a feature is also functional when it is essential to the use or purpose of the device or when it affects the cost or quality of the device. The *Qualitex* decision did not purport to displace this traditional rule. Instead, it quoted the rule as *Inwood* had set it forth. It is proper to inquire into a 'significant non-reputation-related disadvantage' in cases of esthetic functionality, the question involved in *Qualitex.* Where the design is functional under the *Inwood* formulation *there is no need to proceed further to consider if there is a competitive necessity for the feature.*

532 U.S. at 32-33 (emphasis added). This is not a case involving "aesthetic functionality." "In *Qualitex*, . . . esthetic functionality was the central question, there having been no indication that the green-gold color of the

laundry press pad had any bearing on the use or purpose of the product or its cost or quality." *Id.* at 33. Therefore, as explained and clarified in *TrafFix*, the Court need not analyze "competitive necessity" if Speare Tools' packaging is "essential to the use or purpose of the device or when it affects the cost or quality of the device." *See also, Eco Mfg. LLC v. Honeywell Int'l, Inc.*, 357 F.3d 649, 654-55 (7th Cir. 2003) ("*TrafFix* rejected an equation of functionality with necessity; it is enough that the design be useful").

Speare Tools also argues that the *TrafFix* framework does not apply to a claim involving product *packaging*, as opposed to product configuration. The Court is not persuaded that this is a relevant distinction, and the Court is unaware of any case refusing to apply the basic test of functionality to a claim of product packaging trade dress infringement. *See, e.g., Malaco Leaf, AB v. Promotion in Motion, Inc.*, 287 F. Supp. 2d 355, 373 (S.D.N.Y. 2003) ("use of . . . a common type of functional packaging [such as cellophane, however,] cannot give rise to a suit for trademark or unfair competition") (citing 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, §§ 7:63, 8:20 (4th ed. 2003)). While it is and should be "more difficult to claim production configuration trade dress than other forms of trade dress," *Leatherman Tool Group v. Copper Indus.*, 199 F.3d 1009, 1013 (9th Cir. 1999), this does not mean that the Court should begin its analysis with "competitive necessity,"

contrary to the direction in *TrafFix*.[2]

In this respect, Speare Tools confuses the relevant inquiry, once again, by arguing that its trade dress is not "essential" to the use or purpose of the *tool*. That much is obvious; of course clear plastic packaging has no bearing on the ultimate use or purpose of Speare Tools' adjustable hole saw.[3] That said, the use of clear plastic packaging is functional in the sense that it "serves a utilitarian advantage" by "permit[ting] the purchaser to view the product." *Seirus Innovative Accessories, Inc. v. Gordini U.S.A., Inc.*, 849 F. Supp. 2d 963, 987 (S.D. Cal. 2012); *Original Appalachian Artworks, Inc. v. Blue Box Factory (USA)*, 577 F. Supp. 625, 631 (S.D.N.Y. 1983) (the "plastic front window on which the dolls are sold" cannot be protected as trade dress because it is "a commonly used, functional device for displaying dolls"); *Storck USA, L.P. v. Farley Candy Co., Inc.*, 821 F. Supp. 524, 529 (N.D. Ill. 1993) ("transparent

---

[2] As the court observed in *Leatherman*, circuits were split, at least in 1999, as to "whether product configuration cases are different conceptually from ordinary trademark or trade dress cases." 199 F.3d at 1013, n.6. The "focus of the split, however, is what it takes for a trade dress to be 'inherently distinctive' and whether the traditional categories of generic, descriptive, suggestive, arbitrary, and fanciful can be applied meaningfully in product configuration cases." *Id.* Thus, the distinction between "ordinary trade dress cases" (i.e., product packaging cases) and product configuration cases is not relevant for purposes of the Court's functionality analysis.

[3] In this sense, the Court agrees that the formulation of the test is somewhat confusing. Courts that find a particular type of packaging to be functional – i.e., clear plastic packaging that allows a consumer to see the product at the point of purchase – seem to focus on the use of packaging in stores to sell the product, not whether the package has any bearing on the actual use of the product once it is bought. *Compare*, *Sherwin-Williams Co. v. JP Int'l Hardware Co.*, 988 F. Supp. 2d 815, 817-18 (N.D. Ohio 2013) (use of a "distinctive yellow and brown packaging, known as a 'brush keeper,'" is not "essential to the use or purpose" of a paint brush).

plastic window[s]" are "clearly functional to display the individually wrapped candy pieces inside the respective packages").

Indeed, Speare Tools' packaging is virtually indistinguishable from the "common type of functional packaging" discussed in McCarthy's treatise, *supra*. Professor McCarthy writes:

> The use of ordinary packaging such as transparent cellophane is functional and free for all to use. For example, a molded plastic package for sliced luncheon meats was held functional in that the raised platform held a specified amount of meat and ribs or grooves strengthened the package and aided in the packaging process. Similarly, transparent packaging used to encase an electrical rotary dimmer switch was, on the reversal of a preliminary injunction, found functional. The package is transparent so that viewers can see it; the recesses are shaped to fit snugly around the product; the rounded corners are the result of the molding process; and the rim holds the package tightly closed.

1 McCarthy § 7:87 (citing *Dixie Vortex Co. v. Lily-Tulip Cup Corp.*, 19 F. Supp. 511 (E.D.N.Y. 1937); *In re Oscar Mayer & Co.*, 189 U.S.P.Q. 295 (T.T.A.B. 1975); *Power Controls Corp. v. Hybrinetics, Inc.*, 806 F.2d 234 (Fed. Cir. 1986)). Similarly here, the blister portion of Speare's clamshell package is transparent so that purchasers can see the product and read the insert card when the packaging is displayed in stores. Moreover, like the clear plastic packaging that "fit snugly" around the electrical rotary dimmer switch discussed by Professor McCarthy (citing *Power Controls*), the blister portion of Speare's packaging, including the clear plastic disk and raised portions, fits

snugly around the insert card, hole saw, hex key, and dust shields to "hold[] the package tightly closed." *Id.*

Speare's packaging is also functional because it "affects the cost or quality of" the packaging – and therefore the device. ECF No. 70, Declaration of Tim Duitsman, Klein Tools' Senior Vice President of Product Development and Quality, ¶ 6 ("The clear plastic packaging of Speare's packaging reduces packaging material and, hence, expense by, for example, utilizing a round shape and conforming to the shape and size of the hole saw, hex key, and dust shields"). Speare responds that his "trade dress packaging would cost the same whether it was in rectangular, square or circular shape since [his] packaging is made by manufacturing them in four-up fashion as four squares side-by-side." ECF No. 74, Speare Declaration, ¶ 22. However, Speare goes on to explain that the square package is "'stamped' wherein the corners are cut out to form the circular package. The removed corners become waste and are thrown out." *Id.* Thus, the circular packaging, by necessity, weighs less than other shapes, and Speare concedes that shipping costs are a function of weight. ECF No. 82, Klein's Response to Speare's Statement of Additional Facts, ¶ 92.

The foregoing analysis does not change upon consideration of the insert card. The insert card has several useful properties, including written and pictorial instructions on how to use the product. Moreover, the card's circular

shape conforms to the plastic packaging that surrounds it. Speare Tools cannot trademark a circle. "A circle is the kind of basic design that a producer . . . adopts because alternatives are scarce and some consumers want the shape regardless of who manufactures it. There are only so many geometric shapes; few are both attractive and simple enough to fabricate cheaply." *Franek* at 861.

Nor can Speare Tools gain protection based upon the overall appearance of its packaging. On the whole, the asserted features make the product (1) cheaper to produce (because of the use of minimal packaging); (2) stronger (because of the stepped sides on the blister package); (3) more appealing to consumers (by reducing cost, revealing the parts of the product at the point of sale, and including photos and instructions showing how the product is used); and (4) more appealing to retailers (because of the added strength, lower cost, nesting capability of the blister packages, and the use of information provided to consumers at the point of sale). All of these features are functional, and none were added to "produce a distinctive appearance that would help consumers identify the product's source." *Specialized Seating*, 616 F.3d at 728. Where the whole is "nothing other than the assemblage of functional parts, and where even the arrangement and combination of the parts is designed to result in superior performance, it is semantic trickery to say there is still some sort of separate 'overall appearance' which is non-

functional." *Leatherman*, 199 F.3d at 1013.

Finally, many of the features in Speare Tools' alleged trade dress are described and claimed in third-party utility patents. For example, U.S. Patent No. 5,730,290 describes and claims nesting of packaged plungers for easy stacking, storage, shipping, and display; U.S. Patent No. 4,467,994 describes and claims a mold with circumferential ridges to help make a hollow product rigid; U.S. Patent No. 3,009,603 describes and claims a flower pot with "stepped portions" that facilitate grip and rigidity and prevent deformation of sidewalls; and U.S. Patent No. 4,082,184 describes and claims a container "with sidewalls that are formed by a plurality of concentric sections . . . stepped inwardly" to "not only provide nesting seats, but form stiffening rings to oppose bulging of the sides of the plastic containers under load." ECF No. 69-1, Klein Tools' Statement of Facts, ¶¶ 54-64. A utility patent is "strong evidence that the features therein are functional. If trade dress protection is sought for those features the strong evidence based on the previous patent adds great weight to the statutory presumption that features are deemed functional until proved otherwise by the party seeking trade dress protection." *TrafFix* at 30; *see also Franek* at 857 ("Utility patents serve as excellent cheat sheets because any design claimed in a patent is supposed to be useful").

Speare Tools also pled a claim for trade dress infringement and unfair competition under Wisconsin common law. Since its trade dress is functional,

- 15 -

Speare Tools cannot succeed on its state law claims. *See, e.g., OgoSport, LLC v. Maranda Enters., LLC*, Case No. 10-C-155, 2012 WL 683111 (E.D. Wis. Mar. 2, 2012); *Rizzo v. South Bend Sporting Goods*, 2009 WL 2495461, at \*2 (W.D. Wis. Aug. 12, 2009) (in a common law trade dress claim, the plaintiff's trade dress must be "primarily non-functional"). Summary judgment is granted as to all counts.

## III.    Miscellaneous motions

Also before the Court are a number of miscellaneous motions that can be addressed herein.

1.      Klein Tools moves to exclude expert testimony. Since Klein is entitled to summary judgment as to liability, this motion is denied as moot.

2.      Klein Tools moves to seal portions of Exhibit C to the Declaration of James Lovsin, ECF No. 71-3. Klein asks the Court redact the amounts listed for quantity, sales, and credits because such amounts are not publically available and would competitively harm Klein or Speare if it was disclosed. Similarly, Speare Tools moves to seal portions of Exhibit B (ECF No. 76-28) and Exhibits E (75-5), F (75-6), G (75-7), H (75-8) and P (75-16) to the Declaration of Mark Grossman. Exhibit B is an internal client email which contains the name of Klein's supplier; Exhibits E, F, G, H and P are deposition testimony excerpts that refer to internal emails that could have an effect on Klein's business reputation.

The Seventh Circuit has been very clear in explaining that a party asking for secrecy in federal court filings "must explain how disclosure would cause harm and why the harm predicted warrants secrecy." *Marine Travelift, Inc. v. Marine Lift Sys., Inc.*, 2013 WL 4087555, at *1 (E.D. Wis. Aug. 13, 2013) (discussing *Baxter Int'l, Inc. v. Abbot Labs.*, 297 F.3d 544 (7th Cir. 2002)). "Beyond asserting that the document must be kept confidential because we say so, this contends only that disclosure 'could . . . harm [the litigant's] competitive position.' How? Not explained. Why is this sort of harm (whatever it may be) a legal justification for secrecy in litigation? Not explained." *Baxter* at 547. Both motions fail in this regard and are denied.

3.     Klein Tools moves to seal portions of Exhibit BB to the Second Declaration of James Lovsin. Both parties agree that the full names of survey participants listed at DRG0014-DRG0023 in Exhibit BB should be redacted to protect their privacy. Such information is simply not important to the instant litigation, i.e., it did not "influence or underpin" the Court's disposition of this case. *Baxter* at 545. Therefore, this motion is granted.

4.     Speare Tools moves for leave to file a sur-reply brief in opposition to Klein Tools' motion for summary judgment. Having considered the arguments therein, this motion is granted.

5.     Finally, Klein Tools moves for attorneys' fees under Federal Rule of Civil Procedure 37(a)(5)(A). This motion relates to the Court's July 15 Order

addressing certain discovery motions. Regarding a motion to compel filed by

Klein Tools, the Court wrote:

> In response, Speare argues that Klein never should have filed this motion because Speare agreed to supplement its responses (the responses have since been supplemented). Even if Speare promised to correct its responses – a contention that Klein disputes – Klein had little choice but to file this motion because the discovery deadline was about to expire, and Speare refused to stipulate to an extension. For similar reasons, the Court disagrees with Speare's contention that Klein did not confer in good faith prior to filing this motion.
>
> At this point, it seems silly that Speare even bothered to oppose this motion, but Speare also demands fees and expenses, citing Fed. R. Civ. P. 37(a)(5)(A). This provision is inapplicable on its face because it only applies when a motion to compel is granted or, as happened here, 'the disclosure or requested discovery is provided after the motion was filed.' *Id.* Klein, not Speare, may be entitled to such an award. Klein's request for leave to file a petition for expenses under Rule 37(a)(5)(A) is granted.

ECF No. 65, at 1-2.

Accordingly, Klein Tools moves for fees under Rule 37(a)(5)(A), which

was amended in 1993 to reach the scenario at issue here: "where information

that should have been produced without a motion to compel is produced after

the motion is filed but before it is brought on for hearing." Advisory

Committee Notes, 1993 Amendments, ¶ 7. That said, the rule also provides

that fees must not be awarded if (i) the movant filed the motion before

attempting in good faith to obtain the disclosure or discovery without court

action (the Court already rejected Speare Tools' argument that Klein did not

confer in good faith); (ii) the opposing party's nondisclosure, response, or objection was substantially justified (Speare cannot say that its objection was substantially justified because it had no substantive objection); and (iii) other circumstances make an award of expenses unjust.

Speare Tools hangs its hat on the last exception. Speare's primary complaint is that Klein waited until the final four days of discovery at the end of February to send a letter informing Speare's counsel of a potential discovery issue. The Court previously chided Speare Tools for refusing to stipulate to an extension of the discovery deadline, but Klein must share some of the blame because its demand for supplementation related to discovery responses made by Speare months earlier in November of 2013. Klein waited until just before the discovery deadline to demand supplementation, and when Speare couldn't supplement in time, Klein moved to compel because it was bumping up against the discovery deadline.

Accordingly, the Court finds that Klein should not be entitled to fees that are related to initially filing the motion to compel. ECF No. 94, Declaration of James Lovsin, ¶ 10 (2/28/14 ERM 1.2 hours, 2/28/14 JLL 8.3 hours). However, the Court still adheres to the belief that Speare never should have opposed the motion in the first instance.[4] Therefore, Klein's motion is

---

[4] Speare Tools' assertion that it "had no choice" but to oppose the motion is nonsensical.

granted for the balance of the requested award.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1.      Klein Tools' motion to exclude expert testimony [ECF No. 78] is **DENIED** as moot;

2.      Speare Tools' motion for leave to file a sur-reply brief [ECF No. 87] is **GRANTED**;

3.      Speare Tools' motion to seal [ECF No. 77] is **DENIED**;

4.      Klein Tools' motion to seal [ECF No. 72] is **DENIED**;

5.      Klein Tools' unopposed motion to seal [ECF No. 97] is **GRANTED**;

6.      Klein Tools' motion for attorneys' fees [ECF No. 93] is **GRANTED**-**IN**-**PART** and **DENIED**-**IN**-**PART**, such that Klein Tools is awarded $7,718.95 in attorneys' fees; and

7.      Klein Tools' motion for summary judgment [ECF No. 67] is **GRANTED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 18th day of November, 2014.

**BY THE COURT:**

_____
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**